BROOKLYN BANK IN THE CITY OF NEW YORK v. BOROUGH BANK OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department.    March 26, 1915.)

BONDS ☞84—SALE—REPURCHASE—PLEDGE.

   Where defendant bank delivered to plaintiff bank certain bonds in payment of plaintiff's deposit, with an agreement that it would buy back the bonds at par and accrued interest on specified dates, plaintiff in the meantime having the right to sell the bonds, a pledge of the bonds as security to a trust company, which knew of the contract with defend-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ant and held the bonds subject thereto, and at the time for repurchase delivered the bonds to plaintiff to be tendered to defendant, did not prevent the bonds from being held at all times for the defendant, and it is liable for the agreed price.

[Ed. Note.—For other cases, see Bonds, Cent. Dig. §§ 88–99; Dec. Dig. ☞84.]

Appeal from Trial Term, Kings County.

Action by the Brooklyn Bank in the City of New York against the Borough Bank of Brooklyn. Judgment for the plaintiff, and defendant appeals. Affirmed.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and PUTNAM, JJ.

Vincent L. Leibell, of New York City, for appellant.

William W. Taylor, of New York City, for respondent.

PUTNAM, J.   This action was for the purchase price of $100,000, the par value of certain gold debenture bonds of the Island Cities Real Estate Company, and interest. In April, 1909, the Borough Bank, in partial settlement of its liability for plaintiff's deposits made with itself, handed to plaintiff these $100,000 in bonds, upon condition that the Borough Bank should repurchase these securities at par and accrued interest, taking back $25,000 thereof on April 13, 1911, and the remaining $75,000 on April 13, 1912. In making this agreement the plaintiff, by the terms of a letter from its president, expressly reserved a right to sell the bonds at any time. Before the dates for repurchase, the superintendent of banks of the state of New York had taken possession of the Borough Bank.

The complaint averred, and the proofs showed, that on these dates the respective amounts of these bonds had been tendered to the superintendent of banks for the defendant, with demands for the price and accrued interest, which had been refused. On the trial, however, it appeared that in January, 1911, before this first tender, the plaintiff had turned over all its assets including these bonds, and all its property real and personal, to the Metropolitan Trust Company as security for $625,000 to be loaned plaintiff to pay off plaintiff's depositors and liquidate its other obligations. By this transfer the Trust Company had been empowered to make any and all sales, assignments, transfers, and conveyances of the assigned property. This advance was to be repaid August 12, 1912. It was then renewed a year longer; after that it was agreed that this indebtedness to the Trust Company should run as a past-due loan. It was shown upon the trial that the bonds, the subject of the present suit, were still held by the Metropolitan Trust Company under these agreements. The bonds were produced in court and tendered upon the trial. Defendant offered no testimony. Both sides uniting in asking a direction, the learned court instructed the jury to find for the plaintiff for $105,250.

It cannot be doubted that during the original stage of these negotiations, and before the tenders, the plaintiff had a power of sale, which, if exercised, might have put it out of its power to tender all these

bonds. However, upon these bonds being tendered, and the remedy elected to hold the Borough Bank for the full purchase price, and not merely for loss by a resale, the vendor took a different position. We are referred to the received doctrine applicable to such a tender of personal property, that to maintain the right to recover the entire price the vendor is required to hold the articles, not for itself, but as a bailee for the purchaser. In that way the future risks of the securities and the depreciation they may suffer are transferred to the vendee. Slingerland v. Morse, 8 Johns. 474, 478. The arrangement with the Metropolitan Trust Company comprised all plaintiff's available assets, which were subjected to a first lien for the sum the Trust Company advanced. Thereby the lien of the Trust Company extended to the rights of plaintiff under this contract; as such lienor and partial successor in interest, the Trust Company could properly hand over the bonds to it to make the original tenders, and then to make good such tenders by the bonds being proffered in court. Merely continuing the lien of the Trust Company worked no injustice to the defendant. The lien and Trust Company interest were always subject to defendant's call, and, so far as appears, the bonds continued to be held by the plaintiff and by the Trust Company for the defendant. Granted that after such original tenders a new and distinct hypothecation to an innocent holder would have been against the vendor's duty, no such situation has here arisen. Defendant's obligation was subject to plaintiff's right of sale. It therefore cannot object to the Metropolitan Trust Company coming into the matter in the position of a lienor. After these tenders, the bonds were not exposed to new and different hazards. I think defendant has no ground to say that such a lien, in which the lienor always admitted defendant's rights, has in any way discharged its obligation to repurchase them.

The other points urged in the able brief for the appellant establish no ground to interfere with the verdict as directed.

Hence I advise that the judgment and order be affirmed, with costs. All concur.